**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ERIN FLANAGAN, | CASE NO.   1:25-CV-01712-JPC |
| Plaintiff, | JUDGE J. PHILIP CALABRESE |
| v. | |
| NORTHEAST OHIO REGIONAL SEWER DISTRICT, *et al.*, | |
| Defendants. | |

**PRELIMINARY RESPONSE TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER BY DEFENDANTS
CITY OF SHAKER HEIGHTS AND CITY OF CLEVELAND HEIGHTS**

Defendants, City of Shaker Heights and City of Cleveland Heights, acting by and through the undersigned counsel, hereby submit their Preliminary Response to Plaintiff's Motion for Temporary Restraining Order ("TRO"), which was filed on the afternoon of Christmas Eve, December 24, 2025.  As discussed more fully below, Plaintiff's Motion for Temporary Restraining Order is completely meritless and should be denied by this Court.  While the Motion alleges (without any evidence) that Defendants are engaging in construction activity to remove the Horseshoe Lake Dam without a valid environmental permit, this allegation is based upon a fundamental misunderstanding of the key facts regarding the permitting status of the Horseshoe Lake Dam Project (the "Horseshoe Project").

Contrary to Plaintiff's suggestions, the Northeast Ohio Regional Sewer District ("NEORSD") and the Cities of Shaker Heights and Cleveland Heights (the "Cities") are not engaging in any construction activities on the Horseshoe Project without obtaining the necessary environmental permits.  Indeed, prior to Flanagan's filing of this meritless lawsuit, the NEORSD

1

informed her by email on December 4 and December 15, 2025, that NEORSD would not commence any work on the Horseshoe Project prior to receiving all required federal authorizations. This point was further detailed in a written letter that was sent to Flanagan on December 23, 2025, the day before she filed her TRO Motion. (*See* Exhibit 1, NEORSD Letter to Flanagan, dated 12.23.2025). Yet, notwithstanding this fact, Flanagan nevertheless has proceeded ahead with filing her meritless request for a Temporary Restraining Order that would broadly enjoin Defendants from engaging in *any* "ground disturbing activities" within the "Shaker Lake parklands." (Doc.#17-1, Proposed Order, pg. 3, PageID#167).[1]

This is an extraordinary request that not only is unauthorized by federal law, but also would create a significant danger to the public health and safety, if granted. The Cities have an ongoing obligation to maintain the safety of the existing Horseshoe Lake Dam and Lower Lakes Dam and to maintain the safety of all streams, culverts, roadways, trees, and other parts within the Parklands. Indeed, the Cities often must engage in routine maintenance work with the Parklands from time to time to protect the public safety, and it would create a significant danger to the public health, safety and welfare if the Cites were wrongfully restrained or enjoined from engaging in any "ground-breaking" activity within the Parklands, particularly given that a public safety emergency could arise at any moment that may require immediate action by the Cities. Accordingly, the Cities strongly oppose Plaintiff's Motion for a Temporary Restraining Order because it is not authorized by federal law and would be contrary to public health, safety, and welfare.

---

[1] Flanagan does not define the term, "Shaker Lake parklands," in her Motions or proposed Order. In general, there are parklands located in both Cleveland Heights and Shaker Heights that run from the Cleveland border on the west to Warrensville Center Road on the east, between North Park and South Park Roads. Our references to the "Parklands" in this Response, therefore, includes all of the parklands within this large geographical area.

2

In her Motion, in fact, Flanagan completely fails to show that she is likely to prevail on the merits of her alleged claims, let alone to show that she can satisfy the other three (3) relevant factors for a TRO – that she will "suffer irreparable harm," that "the balance of equities tips in [her] favor, and that an injunction is in the public interest." *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 874 (6th Cir. 2025) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). While Flanagan argues that a TRO is necessary to preserve the "status quo" and prevent the "mootness" of her alleged CWA, NHPA, and NEPA claims, this argument fails to appreciate that each of the three (3) federal claims alleged in Complaint are legally meritless and must be dismissed as a matter of law based upon the following grounds:

1. Clean Water Act: Count III is based upon alleged violation of the Clean Water Act ("CWA"). Any claims under the CWA, however, must be dismissed for lack of subject matter jurisdiction because Flanagan failed to comply with the statutory requirement to provide 60 days notice of her alleged CWA claims, as required by 33 U.S.C. § 1365(b). Under binding Sixth Circuit precedent, in fact, a citizen's failure to adhere to this 60-day statutory notice requirement is jurisdictional, and requires the dismissal of a CWA claim for lack of subject matter jurisdiction. *See South Side Quarry, LLC v. Louisville & Jefferson Cnty. Metro. Sewer Dist.,* 28 F.4th 684, 690 (6th Cir. 2022); *Atl. States Legal Found., Inc. v. United Musical Instruments U.S.A., Inc.*, 61 F.3d 473, 478 (6th Cir.1995); *Walls v. Waste Res. Corp.*, 761 F.2d 311, 316 (6th Cir. 1985). Accordingly, the CWA claim alleged in Count III of the Complaint must be dismissed for lack of subject matter jurisdiction.

2. NEPA and NHPA Claims: Counts I and II of the Complaint allege claims under the National Historic Preservation Act ("NHPA") and National Environmental Policy Act ("NEPA"). Both claims must be dismissed, however, for lack of subject matter jurisdiction and

3

failure to state a claim for multiple legal reasons. As the Sixth Circuit has held, "NEPA does not authorize a private right of action." *Sierra Club v. Slater*, 120 F.3d 623, 630 (6th Cir. 1997). Rather, any claims relating to a federal agency's compliance with the NEPA can be raised only via a claim for judicial review of a final agency action under Section 702 of the Administrative Procedures Act. *Friends of Tims Ford v. Tennessee Valley Authority*, 585 F.3d 955, 964 (6th Cir. 2009). The same principle applies to claims based upon alleged violations of the NHPA by a federal agency. *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1099 (9th Cir. 2005) (holding that Section 106 of NHPA "does not authorize suit against federal agencies nor is it a waiver of sovereign immunity against the United States. Instead, such a waiver must be predicated in this instance on § 702 of the APA"). Indeed, it is well-established that both the NEPA and the NHPA apply to federal agencies only; they do not create independent causes of action against state or local governments. *Kaufmann v. Federal Aviation Admin.*, 722 F. Appx 438, 442 (6th Cir. 2018) ("NEPA, the NHPA, and the Transportation Act generally apply only to federal agencies"): *see also Western Mohegan Tribe & Nation of N.Y. v. New York*, 246 F.3d 230 (2d Cir. 2001) (dismissing NHPA claim against State of New York because "the law makes it clear that violations of the NHPA can only be committed by a federal agency"). Accordingly, the NEPA and NHPA claims alleged in Counts I and II of the Complaint also must be dismissed.

3.      Lack of Article III Standing:  Finally, the Court should dismiss Flanagan's alleged claims for lack of standing. While the Court issued an Order today that makes a preliminary determination that Flanagan has Article III standing based upon the Supreme Court's decision in *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000), Defendants have not yet had the opportunity to brief this jurisdictional issue. Indeed, the Supreme Court's decision in *Laidlaw* is distinguishable because Flanagan's three (3) claims are based upon

4

the alleged failure to comply with the *procedural* requirements of the CWA, NEPA, and NHRA, and she has failed to show that she has suffered any "procedural injury" under those statutes. *See Friends of Tims Ford v. Tennessee Valley Auth.*, 585 F.3d 955, 967-968 (6th Cir. 2009) (affirming district court's dismissal of environmental claims based upon alleged NEPA and TVA violations for lack of standing because plaintiff failed to show any "procedural injury").  Moreover, given the unique nature of her alleged claims, Flanagan has failed to demonstrate that she can satisfy the causation and redressability requirements for Article III standing, which require her to show (a) there is "a causal connection between the injury and the conduct complained of— the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court,'" and (b) that "the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-561 (citations omitted).

For all of these reasons, therefore, Defendants intend to file a Motion to Dismiss under Civ. R. 12(b)(1) and 12(b)(6), and would respectfully request that the Court set an appropriate briefing schedule at the December 29 hearing to resolve these threshold legal issues.  Indeed, under the relevant Sixth Circuit precedent, this Court cannot grant a preliminary injunction unless Flanagan can show that she has a strong likelihood of success on the merits of her alleged claims. *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 385 (6th Cir. 2023).  Moreover, if the Court lacks subject-matter jurisdiction over this case, then it "may not adjudicate Plaintiff's motion for a temporary restraining order." *Yoo v. E. Ohio Gas Co.*, No. 1:25-CV-548, 2025 WL 885683, at *2 (N.D. Ohio Mar. 21, 2025).  Accordingly, since Flanagan has failed to comply with the jurisdictional 60-day notice requirement to bring a CWA claim, and cannot legally bring any claims for alleged violations of the NHPA or NEPA, this Court should not grant any injunctive relief, but instead should dismiss this action for lack of jurisdiction, lack of standing, and failure to state a claim.

5

**CONCLUSION**

For these reasons, the Court should deny Plaintiff's Motion for Temporary Restraining Order, and set a briefing schedule to determine whether the Court should dismiss this entire action for lack of subject matter jurisdiction and/or for failure to state a claim.

Respectfully submitted,

/s/ Stephen W. Funk
Stephen W. Funk (0058506)
Terrence S. Finn (0039391)
ROETZEL & ANDRESS, LPA
222 South Main Street, Suite 400
Akron, OH 44308
Telephone:  (330) 849-6602
Email: sfunk@ralaw.com; tfinn@ralaw.com

*Attorneys for Defendants City of Shaker Heights and City of Cleveland Heights*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of December, 2025, a copy of the foregoing *Preliminary Response* was filed electronically with the Court and was served upon Plaintiff, Erin Flanagan, through the Court's electronic filing system.  Moreover, Defendants have served a copy upon the attorneys for the Northeast Ohio Regional Sewer District and the City of Cleveland via electronic mail.

/s/ Stephen W. Funk