# HUNTON

HUNTON ANDREWS KURTH LLP
RIVERFRONT PLAZA, EAST TOWER
951 EAST BYRD STREET
RICHMOND, VIRGINIA 23219-4074

TEL   804 • 788 • 8200
FAX   804 • 788 • 8218

GEORGE P. SIBLEY III
DIRECT DIAL: 804 • 788 • 8262
EMAIL: gsibley@hunton.com

December 23, 2025

Ms. Flanagan:

This letter responds to the Complaint for Declaratory and Injunctive Relief (Complaint) and Motion for Preliminary Injunction (Motion) you filed with the District Court for the Northern District of Ohio on December 15, 2025, both of which purport to describe actions our client, Northeast Ohio Regional Sewer District (NEORSD), intends to undertake in the vicinity of Shaker Lakes. The Complaint advances vague allegations of violations of the National Historic Preservation Act (NHPA), National Environmental Policy Act (NEPA), and Clean Water Act (CWA). The Motion claims that preliminary injunctive relief is necessary to enjoin undefined future actions by Defendants at the Shaker Lakes, based on allegations that Defendants violated the NHPA and the CWA.[1]

Both the Complaint and the Motion appear to be predicated on a fundamental misunderstanding of key facts regarding the permitting status and obligations of certain projects, including the Doan Brook Restoration at Horseshoe Park project (Horseshoe Project), Lower Shaker Lake Dam maintenance, and the controlled breach of the Horseshoe Lake Dam by the City of Shaker Heights.[2]  We are sending you this letter to provide you with facts that will allow you to assess whether you have nonfrivolous arguments to support the claims you make in your Complaint and Motion. *See* Fed. R. Civ. P. 11(b)(2); *King v. Whitmer*, 71 F.4th 511, 528 (6th Cir. 2023) ("A legal contention is frivolous if it is 'obviously without merit' under existing law and unsupported by a good-faith argument to change or extend the law."); *see also* Fed. R. Civ. P. 11(c). NEORSD believes your arguments are not valid and asks you to withdraw both your Complaint and your Motion.

NEORSD appreciates your concern for the Shaker Lakes and would welcome the opportunity to engage with you directly on these issues. NEORSD is committed to full transparency and would be willing to meet and confer, and help clarify for you how the NEORSD's actions are consistent with its duties and obligations under the law. NEORSD

---

[1] "Defendants" includes the Northeast Ohio Regional Sewer District, City of Cleveland, City of Shaker Heights, and City of Cleveland Heights.

[2] Your cease-and-desist notice and email to Eric Luckage (Chief Legal Officer, NEORSD), both dated December 4, 2025, similarly confuse the issue by purporting to equate the fully-permitted maintenance work at Lower Shaker Lake Dam with the ongoing permitting process for the Horseshoe Project.

# HUNTON

December 23, 2025
Page 2

believes that resolution outside the judicial process is preferable so as not to unnecessarily burden the court with claims based on inaccurate facts and misapplication of the relevant law.

## I.     Background on the Relevant Statutes

Section 404 of the CWA requires a permit from the U.S. Army Corps of Engineers (Corps) prior to discharging of dredged or fill material into "waters of the United States." *See* 33 U.S.C. § 1344; 33 C.F.R. § 328.3. Section 404 establishes multiple permitting regimes, the applicability of which depends on the extent of a project's adverse impacts. As relevant to the Horseshoe Project, section 404(e) provides for "nationwide permits," which allows the Corps to provide advance authorization for categories of activities where those activities will result in no more than minimal individual and cumulative adverse environmental effects. 33 U.S.C. § 1344(e). The Corps satisfies its obligations under NEPA, for every project that qualifies for the nationwide permit, at the time it issues the permit.[3] This means that project-specific NEPA review for projects qualifying under a nationwide permit is not required.

Section 106 of the NHPA requires federal agencies to consult with designated stakeholders regarding the effects on historic properties for projects that require a federal license. The NHPA is a purely procedural statute, which means it does not demand a particular result and does not impose a substantive mandate on the agencies governed by it. *See, e.g.*, *Dine Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831, 846 (10th Cir. 2019). Importantly, both NEPA and the NHPA only apply when there is a predicate federal action. In other words, while procedural requirements under the statutes may be triggered when, for example, the Corps issues a permit, they have no applicability in the absence of federal action. As discussed below, NHPA consultation has been completed for the Lower Shaker Lake Dam maintenance and is ongoing for the Horseshoe Project.

## II.     Project Overview and Permitting

The Horseshoe Project is a comprehensive stream restoration project that will set a long-term foundation for ecological uplift in the North and Middle Branches of the Doan Brook. One component of this proposed project is the removal of a portion of Horseshoe Lake Dam, which will alleviate safety concerns related to its potential for failure as a Class I High Hazard dam under the Ohio Department of Natural Resources' (ODNR) dam safety program.[4]

---

[3] *See* Decision Document, Nationwide Permit 27, at 6 https://usace.contentdm.oclc.org/utils/getfile/collection/p16021coll7/id/19807 ("The analyses in this document and the coordination that was undertaken prior to the issuance of the NWP fulfill the requirements of NEPA.").

[4] ODNR administers Ohio's dam safety program. The program assigns each dam a classification between I and IV based on the height, storage volume, and potential downstream hazard. ODNR, Dam & Levee

# HUNTON

December 23, 2025
Page 3

To the extent the Horseshoe Project will result in the discharge of dredged or fill material, NEORSD is in the process of obtaining verification from the Corps that this work is permitted under Nationwide Permit 27, which is a general permit that covers aquatic habitat restoration, enhancement, and establishment activities.[5] Reliance on the Corps' permit is what triggers consultation requirements under the NHPA. *See* 54 U.S.C. § 306108 (stating that consultation is required "prior to the issuance of any license"); *CTIA-Wireless Ass'n v. FCC*, 466 F.3d 105, 112 (D.C. Cir. 2006) (stating that obtaining a federal permit triggers the NHPA).[6] The Corps is the lead Federal agency for Section 106 consultation and is facilitating this ongoing process.

The final step in that process will be a memorandum of agreement (MOA), which will impose appropriate mitigation measures for the Horseshoe Project's adverse effects to the North Union Shaker Site and Shaker Village Historic District.[7] Prior to finalization, the consulting parties will receive a draft version of the MOA from the Corps to review and provide comments.

NEORSD CLO Eric Luckage has informed you via email on December 4 and December 15, 2025, that NEORSD will not commence any work as part of the Horseshoe Project (or any of its projects) prior to receiving all required federal authorizations, including verification for Nationwide Permit 27 and finalizing consultation under the NHPA. Although the Cities and the NEORSD approved the Project Agreement for construction of the Horseshoe Project, those actions do not amount to imminent work at the site. Following the receipt of all federal authorizations, NEORSD will begin soliciting construction bids for this project in late February/early March 2026. Presently, NEORSD does not anticipate the Horseshoe Project construction to begin until late summer/early fall 2026.

As there is no work that would occur without the requisite federal authorizations, much less any work that would occur in the near future, there are no grounds for claiming you will individually suffer irreparable harm absent a preliminary injunction. Moreover, any purported claim as to the adequacy of a federal authorization is premature because such processes are ongoing and, as such, there is no final agency action to challenge. *See* 5 U.S.C. § 704; *Lujan v.*

---

Classification, https://ohiodnr.gov/rules-and-regulations/rules-and-regulations-by-division/water-resources/dam-levee-classification. "Class I" dams' potential downstream hazard rating is "probable loss of life." *Id.*

[5] Decision Document, Nationwide Permit 27, https://usace.contentdm.oclc.org/utils/getfile/collection/p16021coll7/id/19807.

[6] Separate NEPA review is not required when relying on a Nationwide Permit because NEPA is satisfied at the time of the permit's issuance. *See id.* at 6 ("The analyses in this document and the coordination that was undertaken prior to the issuance of the NWP fulfill the requirements of the National Environmental Policy Act.").

[7] Indeed, the Friends of the Horseshoe Lake, of which you previously represented you were affiliated, is a consulting party and is participating in this process.

# HUNTON

December 23, 2025
Page 4

*Nat'l Wildlife Fed.*, 497 U.S. 871, 882 (1990) ("When…review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'").

### III. The Lower Shaker Lake Dam Maintenance and the Horseshoe Park Project are Separate Projects

It is crucial to understand both that the Horseshoe Project is the sole source of any outstanding required federal authorizations and that any future work as part of the Horseshoe Project is separate and apart from other work that may occur within the Shaker Lakes. An example of such other work is the minor repairs that were completed on the Lower Shaker Lake Dam in 2019, which included removal of vegetation and placement of riprap on the dam embankment for erosion protection. This work was required by ODNR and was crucial for maintaining dam safety, which, like Horseshoe Lake Dam, ODNR has determined does not meet its Class I High Hazard Dam Safety Standards. NEORSD secured all necessary permits and authorizations for that 2019 work, including authorization from the Corps for the discharge of dredged or fill material under section 404 of the Clean Water Act. As part of the Corps' review, it engaged Ohio's State Historic Preservation Office, which evaluated the project and concurred with the Corps' determination that the project would have no adverse effect on historic properties.

You also recently objected to the NEORSD's planned dam safety maintenance work at the Lower Shaker Lake Dam. This work will replace riprap at the 2019 site that has been displaced over the years. This necessary maintenance of the 2019 work is fully permitted, as confirmed by Corps. Importantly, this maintenance work at Lower Shaker Lake Dam, which is now planned for January, is entirely separate—both factually and legally—from any future work as part of the Horseshoe Project. Each of these projects has independent utility and is in no way dependent on the other.

The Complaint and Motion also reference the emergency breach of Horseshoe Lake Dam in 2021, asserting there are questions regarding that action's legality due to what you perceive to be a lack of federal review to address its impacts on a listed historic property. This action was taken at the recommendation of the ODNR to mitigate the potential for a catastrophic failure of the Horseshoe Lake Dam as a "Class I" dam. This project was conducted by the City of Shaker Heights rather than NEORSD.

### IV. Conclusion

The claims in the Complaint and Motion are devoid of merit, particularly in the context of injunctive relief, which is "an extraordinary remedy that may only be awarded upon a clear

# HUNTON

December 23, 2025
Page 5

showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Moreover, as there is a Corps permit that authorizes the work at Lower Shaker Lake Dam, the section 404 permit shield precludes enforcement actions by the government or a citizen for the permitted work. *See* 33 U.S.C. § 1344(p); *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 146 F.4th 1080, 1083 (11th Cir. 2025). Indeed, the CWA citizen suit provision does not provide citizens the right to sue to enforce the conditions of section 404 permits. *See, e.g.*, *Glynn Env't Coal.*, 146 F.4th at 1092-93 (Pryor, C.J., concurring); *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356, 358-60 (5th Cir. 2012); *Harmon Cove Condo. Ass'n v. Marsh*, 815 F.2d 949, 954 (3d. Cir. 1987). NEORSD vigorously disputes any insinuation that there has been or will be an unauthorized discharge; however, to the extent you are suggesting such an argument, you have not met the jurisdictional requirements for filing a citizen suit and seeking injunctive relief for the discharge of a pollutant under the CWA. *See* 33 U.S.C. § 1365(b); *Walls v. Waste Res. Corp.*, 761 F.2d 311, 316 (6th Cir. 1985) (holding that the 60-day notice requirement is a jurisdictional requirement to bringing a citizen suit under the Clean Water Act).

NEORSD would welcome the opportunity to engage with you outside of the judicial process to address all reasonable concerns.

Sincerely,

cc:    Eric Luckage, Chief Legal Officer, NEORSD
       Kataria Waag, Assistant General Counsel (Contracts and Governance), NEORSD
       Tamar Gontovnik, Assistant General Counsel (Environmental), NEORSD
       Bill Gruber, Law Director, City of Shaker Heights
       Bill Hanna, Law Director, City of Cleveland Heights
       Steve Funk, Roetzel & Andress, Outside Counsel to Cleveland Heights & Shaker Heights
       Geraldine (Gerri) Butler, Chief Assistant Director of Law, City of Cleveland
       Bill Menzalora, Chief Assistant Director of Law, City of Cleveland
       J.R. Russell, Chief Assistant Director of Law, City of Cleveland